**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 20 B 05643 |
| | ) | |
| ANTONIO WELLS, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Honorable Donald R. Cassling |

**MEMORANDUM OPINION AND ORDER DENYING SUPPLEMENTAL MOTION FOR SANCTIONS (DOCKET NO. 93)**

Debtor, Antonio Wells, argues in a variety of motions that the mortgagee on his home, Shellpoint Mortgage Servicing, ("Creditor"),[1] charged him twice for fees and other mortgage costs that had been paid in full under his Chapter 13 plan and subsequently discharged.  He argues that these overcharges not only damaged him by the amount of the duplicated fees and other amounts due under the mortgage, but also damaged his credit rating, resulting in yet more damages.  In response, Creditor admits that it or its predecessor mortgage holder engaged in sloppy and inaccurate bookkeeping that incorrectly stated some allocations of funds it received from the Chapter 13 Standing Trustee, ("Trustee"), under the plan, but states that it ultimately corrected those bookkeeping errors in full, resulting in no financial harm to Debtor.

Upon consideration of all of the evidence presented at trial[2], the Court concludes that Debtor accurately pointed out errors in Creditor's payment records that strongly suggested that Creditor had "double-charged" the fees that Debtor owed it.  That showing shifted the burden of persuasion to Creditor to rebut Debtor's showing.  The Court concludes that Creditor succeeded

---

[1] The creditor in this case, as described in Proof of Claim 11-1, is Deutsche Bank National Trust Company, as Trustee for First Franklin Mortgage Loan Trust 2006-FF13, Mortgage Pass-Through Certificate, Series 2006-FF13, ("Deutsche Bank"). (Proof of Claim 11-1 at 1). Specialized Loan Servicing LLC, ("Specialized Loan Servicing"), is listed as an "[o]ther name the creditor used with the debtor." (*Id.*). NewRez LLC d/b/a Shellpoint Mortgage Servicing, ("Shellpoint"), appears to have taken over as servicing agent for Deutsche Bank in July of 2024. (Ex. C-A at 9). In initiating these proceedings, Debtor has exclusively moved against Shellpoint. Except where a distinction between these entities is relevant, the Court will refer to them interchangeably as "Creditor."

[2] In preparing its ruling, the Court conducted a trial on November 19, 2025, hearing testimony from Debtor and from one witness of Creditor.  The Court has also considered Debtor's Motion to Enforce Discharge Injunction and to Stay Foreclosure Proceedings, (the "Motion"), (Dkt. No. 88), Debtor's Supplemental Motion for Sanctions (Dkt. No. 90), Debtor's Second Supplemental Motion for Sanctions (Dkt. No. 93), (collectively, the "Supplemental Motions"), Creditor's Response, (the "Response"), (Dkt. No. 95), the parties' Pretrial Statement, along with all accompanying exhibits, and the testimonies at trial. The Court also takes judicial notice of the contents of Debtor's bankruptcy case.

in establishing that, while Creditor's sloppy bookkeeping made it initially appear that it had double- dipped on its fees, Creditor timely corrected its bookkeeping errors and properly allocated the funds paid it by the Trustee under the plan.  As a result of these corrections, Creditor has demonstrated to the Court's satisfaction that Creditor did not double-dip on its fees and was in fact paid no more under the plan than it was entitled to receive.  As a result, the Court holds that Debtor has failed to meet his burden of proving to the contrary by a preponderance of the evidence and that his various motions must therefore be denied.

**PROCEDURAL BACKGROUND**

On February 28, 2020, Debtor filed a voluntary petition for relief under Chapter 13 and a proposed plan. (Dkt. No. 1, 6).  Debtor's plan provided that he would make direct payments to Creditor on the debt secured by his real property at 3827 W. 123rd Street, Alsip, IL 60803 (the "Property"). (Dkt. No. 6 at 2). On April 27, 2020, Creditor filed its Proof of Claim 11-1, ("Proof of Claim"),[3] asserting prepetition arrears of $7,659.95. (Proof of Claim 11-1).

On May 20, 2025, the Trustee filed a Notice of Completion of Plan Payments, and on May 21, 2025, the Court entered a discharge. (Dkt. Nos. 84 & 86).

On July 30, 2025, Debtor filed his Motion to Enforce Discharge Injunction and the Motion to Stay Foreclosure, with a hearing scheduled for August 28, 2025. (Dkt. No. 88). On August 6, 2025, the Trustee filed his Final Report and Account. (Dkt. No. 89). On August 7, 2025, Debtor filed his Supplemental Motion for Sanctions against Creditor, (the "First Motion for Sanctions"), with a hearing scheduled for August 28, 2025. (Dkt. No. 90). On August 10, 2025, Debtor filed a Supplemental Motion for Sanctions against Creditor Mortgage Servicing for Violation of the Discharge Injunction, (the "Second Motion for Sanctions"), with a hearing scheduled for August 28, 2025. (Dkt. No. 93). On August 25, 2025, Creditor filed its Response to the Second Motion for Sanctions. (Dkt. No. 95). On August 28, 2025, Debtor withdrew his First Motion for Sanctions, the Court denied without prejudice Debtor's Motion to Enforce Discharge Injunction and Stay Foreclosure, and the Court continued the hearing on Debtor's Second Motion for Sanctions to September 25, 2025. (Dkt. Nos. 97-99).

On September 25, 2025, the Court set for trial the remaining matter of Debtor's Second Motion for Sanctions to be held November 19, 2025. In the joint Pretrial Statement, the parties stipulated that the Trustee had disbursed payments on Claim 11-1 in full, and the pre-petition arrearages as set forth in the claim were paid and satisfied prior to discharge, as reflected in the Trustee's Final Report. (Pretrial Statement, Stipulated Facts ¶3).

---

[3] Creditor filed duplicate Proofs of Claim 11-1 and 12-1 on the same day, April 27, 2020. (Proofs of Claim 11-1 and 12-1). On April 15, 2025, the Trustee filed an objection to Claim 12-1, identifying it as a duplicate of Claim 11-1. (Dkt. No. 82). On May 15, 2025, the Court sustained the Trustee's objection, and disallowed Claim 12-1. (Dkt. No. 83).

2

## SUMMARY OF PARTIES' ARGUMENTS

Of the many claims and arguments presented by Debtor in his Motion and Supplemental Motions, the Court agrees with Creditor that it had, for the most part, fixed the bookkeeping errors identified by Debtor and properly credited the funds received from Debtor to the appropriate past-due debt, and that those bookkeeping corrections were readily apparent from a review of Creditor's records, which had been shared with Debtor over the course of the loan. Thus, the Court concludes that Debtor has failed to establish by a preponderance of the evidence that Creditor violated the discharge injunction or automatic stay with respect to most of his allegations.

However, after a thorough review of the records and consideration of the trial testimony, the Court agrees with Debtor that one of the erroneous bookkeeping entries he identified did strongly suggest that Creditor had double-dipped on its fees under the mortgage, without a readily apparent correction in the record that that erroneous entry had been fixed.  Specifically, Debtor alleges that $1,939.59 in fees appearing on his July 2024 Mortgage Statement from Creditor were added to his account after he had already paid these fees through his plan via Trustee disbursements by November 29, 2022. (Pretrial Statement at 1-3). He alleges further that these fees were not properly removed but were instead relabeled and incorporated into the balance of the loan. (*Id.*). In other words, Debtor argues that Creditor did not properly credit Trustee disbursements to his account, charging him twice for the same fees. When Creditor then attempted to collect these prepetition arrears as post-petition payments, Debtor argues that Creditor violated the automatic stay. (Pretrial Statement at 2-3). When Creditor did not remove these fees from Debtor's account post-discharge, Debtor argues that Creditor violated the discharge injunction. (Pretrial Statement at 1).

Creditor, in its Response, states that "[t]he fees which Debtor alleges were newly added after the filing of the bankruptcy proceeding were actually incurred prior to the bankruptcy filing and have been paid by the Chapter 13 Trustee." (Dkt. No. 95 ¶ 3). Creditor responds further in the Pretrial Statement that it did not collect any debts satisfied through the confirmed plan, that all payments made to it were properly credited to the account for pre-petition arrearages as provided for in the plan, and that "[n]o portion of the items identified in Creditor's claim as to pre-petition arrearages were added to the account before or after discharge." (Pretrial Statement at 1). Creditor states finally that "[a]ny collection activity was undertaken after discharge to collect post-petition deficiencies which were to be paid outside of the Plan." (Pretrial Statement at 3).

## APPLICABLE LEGAL STANDARDS

Before resolving this factual dispute, the Court summarizes the applicable legal standards.

### a. Violation of the Discharge Injunction

The Bankruptcy Code provides that a discharge of a claim "operates as an injunction against the … continuation of an action … to collect, recover, or offset any such debt as a personal liability of the debtor[.]" 11 U.S.C. § 524(a)(2). Thus, the injunction provision applies "only when a

3

creditor acts to *collect* a… discharged debt." *In re Kuehn*, 563 F.3d 289, 291 (7th Cir. 2009). As with any injunction, a violation of the discharge injunction is treated as contempt of court. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001). The moving party bears the burden of proving contempt by clear and convincing evidence. *In re Sterling*, 933 F.3d 828, 832 (7th Cir. 2019).

The Supreme Court has held that "[a] court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1804 (2019). In other words, a court should only "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Id.* at 1801.

### b. Violation of the Automatic Stay

The filing of a bankruptcy case operates as a stay against "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case…[.]" 11 U.S.C. § 362(a)(6).

When a creditor violates the automatic stay, § 362(k)(1) provides a remedy for the debtor to recover damages and states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). A creditor can be subject to liability under § 362(k)(1) if the creditor engages in conduct which violates the automatic stay, with the knowledge that the bankruptcy petition has been filed. *Roete v. Smith (In re Roete)*, 936 F.2d 963, 965 (7th Cir. 1991).

In order to recover damages for violation of the automatic stay, a debtor must establish by a preponderance of the evidence the following elements: (1) a bankruptcy petition was filed; (2) the debtor is an individual; (3) the creditor had notice of the petition; (4) the creditor's action were in willful violation of the stay; and (5) the debtor suffered damages. *In re Swindle*, 584 B.R. 259, 266 (Bankr. N.D. Ill. 2018); *In re Sori*, 513 B.R. 728, 732 (Bankr. N.D. Ill. 2014).

A violation of the stay is willful if the creditor (1) had actual notice of the bankruptcy filing and (2) commits a deliberate act when it violates the stay. *Sori*, 513 B.R. at 732. Thus, "[a] 'willful violation' does not require a specific intent to violate the automatic stay." *Price v. United States (In re Price)*, 42 F.3d 1068, 1071 (7th Cir. 1994). Phrased another way, the debtor must prove not that the creditor intended to violate the automatic stay but instead must prove that the creditor actually intended to commit acts which violated the stay. *Johnson v. RJM Acquisitions, LLC*, No. 11-CV-601-WDS, 2012 WL 930386, at *9 (S.D. Ill. Mar. 19, 2012).

4

**ANALYSIS**

While the addition of $1,939.59 in fees on Debtor's June 2024 Statement and its itemization on his October 2024 Statement may give the impression that Creditor charged Debtor a second time for prepetition arrears already paid through the plan, Creditor's witness testimony and the documents it produced at trial make it more likely than not that Creditor did not in fact charge Debtor twice for the prepetition arrears. Instead, the record shows that Specialized Loan Servicing, the original mortgagee, allocated the Trustee disbursements to pay past due monthly payments. Thus, the fees corresponding to the prepetition arrears remained unpaid when Creditor, Shellpoint, took over as the servicer of the mortgage, and they were thereafter added to the July 2024 Statement. Following Debtor's discharge on May 21, 2025, Creditor, Shellpoint, essentially corrected Specialized Loan Servicing's bookkeeping, moving funds from the Trustee's disbursements that had been put toward the past due mortgage payments to pay the fees that had comprised a portion of the prepetition arrears listed in the Proof of Claim.

Specifically, an examination of the Trustee's Ledger and Loan History Summary shows that Specialized Loan Servicing did in fact credit the Trustee disbursements to Debtor's account, but not toward the exact items listed as prepetition arrears in the Proof of Claim. The Trustee's Ledger lists the 16 disbursements to Creditor beginning 06/30/2021 and ending 11/29/2022. (Ex. P-1). Though not explicitly identified as Trustee disbursements in the Loan History Summary, almost every disbursement listed in the ledger can be matched with an equivalent amount in the Loan History Summary, often within a week following the ledger date. (Ex. C-A). Some of these equivalent amounts appear as the difference between two transactions, but they are nevertheless accounted for and credited to the account. In the Loan History Summary, the identified disbursements are almost invariably applied to Debtor's oldest outstanding past due mortgage payments, rather than the exact items listed in the Proof of Claim.

Similarly, a review of the Loan History Summary shows no duplicate charges for the items listed as prepetition arrears in the Proof of Claim. Those items that Debtor identifies as added to the June 2024 Statement and that match the prepetition arrears are first charged to the account in the Loan History Summary on 03/05/2020, and are there described as "FC Costs Assess," "Attorney Cost Assess," and "Prior Unpaid Costs." (Ex. C-A at 32). Matching payments described as "FC Costs Pmt," "Attorney Cost Pmt," and "Prior Unpaid Cost" appear later in the Loan History Summary, with no payments made beyond the original amount owed. (Ex. C-A at 1, 3).

In short, while Debtor cannot be blamed for suspecting a violation of the automatic stay and discharge injunction when fees supposedly paid through his Chapter 13 plan resurfaced more than a year after the Trustee's final disbursement, an extensive review of the evidence shows these were not duplicate charges. Similarly, the fact that Debtor's liabilities were not reduced on his June 2025 Statement after discharge was not a violation of the discharge injunction, because the Trustee's disbursements had already been credited to his account, so that the debt reflected on the June 2025 Statement was accurate as of that date. As a result, the Court concludes that Debtor has

5

not established by a preponderance of the evidence that Creditor violated either the automatic stay or the discharge injunction, and therefore denies the relief sought by Debtor under §§ 362(a)(6), and 524(a)(2).


**ENTERED:**


**DATE:** January 16, 2026

**Donald R. Cassling**
**United States Bankruptcy Judge**

6